**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **BARRY HONIG**, an individual, | ) CASE NO. _____ |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **COMPLAINT** |
| | ) |
| **CHRISTOPHER DROSE,** d/b/a | ) |
| "Bleecker Street Research" and **DOES** | ) **JURY TRIAL DEMANDED** |
| **1-10** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

Plaintiff Barry Honig  by and through his counsel, hereby brings this Complaint against Defendant Christopher Drose d/b/a "Bleecker Street Research," and unnamed Does 1-10 (referred to herein, collectively, as "Defendants"), and in support thereof alleges as follows:

## NATURE OF THE CASE

1.      Plaintiff Barry Honig, along with thousands of other investors, is the victim of a fraudulent "short and distort" campaign perpetrated by the Defendants against public companies ChromaDex, Inc. ("ChromaDex") and Pershing Gold Corporation ("Pershing Gold"). Defendant Christopher Drose, writing under the pseudonym "Bleecker Street Research," in concert with unknown DOE defendants,

short sold stock of ChromaDex and Pershing Gold, two companies in which Plaintiff is a shareholder. The Defendants then published and widely disseminated an extremely negative article full of false and defamatory statements regarding Plaintiff and his involvement with ChromaDex and Pershing Gold, for the purpose of driving down the market price of those stocks so that Defendants could profit on their short sales.

2.     Defendants' scheme worked; on the day that the false article was published, the market price of ChromaDex stock immediately dropped over 50%, destroying over $100 million of shareholder value. In addition to suffering significant loss in the value of his own ChromaDex holdings, Mr. Honig's reputation was impugned and he suffered significant damage to his business.

3.     The defamatory article was published on the internet, where it was exposed to millions of readers for nine days. After Defendants handsomely profited from closing their short positions, defendant Drose publicly admitted that statements in the article "were not supported," that readers should "not rely" on "certain aspects of the article and statements of the author therein," and he removed the article from the website where it originally was posted.

4.     But the damage was done. Immediately after the false statements were published, thousands of ChromaDex shareholders collectively suffered

approximately $100 million in lost value to their ChromaDex stock holdings. ChromaDex's newly appointed Chairman of the Board of Directors abruptly resigned. ChomaDex's relationships with numerous vendors, customers, clients, investors, lenders, employees, consultants and other associations were permanently harmed.  Like other shareholders, Mr. Honig suffered substantial financial losses as the result of the decline in value of ChromaDex stock. Mr. Honig additionally suffered substantial injury in the form of tarnished reputation, interference with his relationships with business associates, among others, and he may suffer continued and irreparable harm.  Portions of the article were picked up and re-published over the internet by many third parties. Defendants' conduct gives rise to claims for libel, libel *per se*, intentional interference with prospective economic advantage, negligence, and a need for injunctive relief.

5.     As a result, Mr. Honig seeks a final order: (i) permanently enjoining Defendants from publishing or making any false and defamatory statements regarding Mr. Honig; (ii) compelling Defendants to take all steps necessary to have immediately removed all false and defamatory statements regarding Mr. Honig from any website, blog or other medium which has published Defendant Drose's article or portions of that article; and (iii) awarding damages to compensate Mr. Honig for Defendants' conduct.

## THE PARTIES

6.     Plaintiff Barry Honig is a private investor who resides in Palm Beach County, Florida. At all relevant times Mr. Honig held stock in both ChromaDex and Pershing Gold.

7.     Defendant Christopher Drose d/b/a "Bleecker Street Research" is a resident of Atlanta, Georgia.

8.     Plaintiff is informed and believes and based thereon alleges that "Bleecker Street Research" is a pseudonym pursuant to which Defendant Drose purports to publish stock market analyses.

9.     Plaintiff is ignorant of the true names and capacities, whether individual, associate, partnership, corporate, or otherwise, of Defendants designated herein as Does 1 through 10, inclusive, and therefore sues those Defendants by these fictitious names.  Plaintiff is informed and believes, and on that basis alleges, that Does 1 through 10, in some way unknown to Plaintiff, are responsible for the acts alleged in this Complaint, are the affiliates, partners, co-conspirators and/or aiders and abettors of Defendant, and have incurred liability to Plaintiff therefor.  Plaintiff will amend this Complaint to allege the true names and capacities of Does 1 through 10 upon discovery thereof.

10.   Plaintiff is informed and believes, and based thereon alleges, that Defendant and Does 1 through 10, are alter egos of one another, and that Defendants are the alter ego of Drose and "Bleecker Street Research."  Plaintiff is further informed and believes that there is such unity of interest and control between and among Defendants that their separate identities have ceased to exist or never did exist, and that to treat Defendants as separate parties would perpetrate a fraud or result in gross injustice.

11.   Non-party Pershing Gold is an emerging Nevada junior gold exploration company whose key asset, the Relief Canyon Mine and processing facility, includes three open-pit mines and a permitted and operational heap leach facility. The plant has the capacity to process gold bearing solutions from the leaching of 8 million tons of ore per year. Further, Pershing Gold has identified a National Instrument 43-101 compliant gold resource at Relief Canyon of 739,000 Measured and Indicated ounces of gold and 70,000 Inferred ounces of gold. Pershing Gold trades on the NASDAQ with the ticker symbol "PGLC."

12.   Non-party ChromaDex is an innovative natural products and drug development company that provides benchmark testing and research services to the pharmaceutical and nutrition industry, and that discovers, acquires, develops and

commercializes proprietary-based ingredient technologies. ChromaDex trades on the NASDAQ under ticker symbol "CDXC."

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as this is a civil action between a citizen of a State and citizens or subjects of a foreign State, and the matter in controversy exceeds $75,000.

14.     Venue and jurisdiction are proper in this Court under 28 U.S.C. § 1391, in that (i) Defendant Drose resides in this district, and (ii) a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## FACTUAL BACKGROUND

15.     In 2015, Defendant Drose created the pseudonym "Bleecker Street Research" as part of a scheme to anonymously destroy the reputations of companies like ChromaDex and Pershing Gold, and profit through his personal short sale of stocks.

16.     Defendant Drose undertook efforts to make "Bleecker Street Research" appear to the public as a reputable equity research firm, even though at the time Drose was an undergraduate student at Furman University. On information and belief, "Bleecker Street Research" is not organized as a legal

6

entity, and, apart from defendant Drose, it had and has no managers, members, directors, officers, employees or clients. Defendant Drose created a website, www.bleeckerstreetresearch.com, upon which he posted articles he drafted relating to publicly traded entities.

17.    Defendant Drose attempts to operate in anonymity. Defendant Drose's name, address and phone number is nowhere to be found on the Bleecker Street Research website. Legitimate equity research firms do not attempt to hide or conceal the authors of their work, are typically affiliated with an investment bank or seek to engage clients to receive ongoing articles directly by subscription, and do not seek to hide the compensation they might receive as a result of publishing articles.

18.    On several occasions in 2015 and 2016, Defendant Drose, writing under his pseudonym Bleecker Street Research, drafted negative articles regarding various public companies, and submitted the articles for publication and widespread dissemination to the website www.seekingalpha.com ("*Seeking Alpha*"). *Seeking Alpha* purports to be a platform for investment research, which among other things, publishes articles submitted by thousands of contributing authors. *Seeking Alpha* purports to have over four million registered users and

claims to have averaged approximately seven million monthly viewers over the past year.

19.     On or before June 20, 2016, Defendant Drose drafted an article under his pseudonym "Bleecker Street Research" entitled "*Pershing Gold and ChromaDex Exposed: These Barry Honig Names Could Fall 70-80% (Or More).*" (hereinafter the "Article"). Drose submitted the Article to *Seeking Alpha* for publication on that website. On June 20, 2016, *Seeking Alpha* posted the Article on its site.

20.     On information and belief, Does 1-10 encouraged Defendant Drose to draft and publish the Article, and they assisted him with the drafting and publishing process.

21.     The Article contained numerous statements accusing Mr. Honig personally of engaging in fraudulent activity, and tying these activities to Pershing and ChromaDex through statements which were false, misleading and/or inaccurate including, but not limited to, the following:

a.     Mr. Honig is a "serial stock promoter."

b.     The SEC and the FBI appear to now be closing in on Honig."

c.   "Honig has historically run multiple 'non-producing' mining companies in Canada and the US which have soared in value, but then ultimately **gone to effectively zero**."

d.   *Newly unsealed federal court documents provide damning evidence against Honig in a significant stock fraud*."

e.   The "SEC is now building a much larger case against Honig for his involvement in dozens of similar stock promotions."

f.   "Honig/Brauser have a regular crew of individuals they use" as "puppet directors."

g.   "A deep dive into who is behind ChromaDex reveals a wide array of individuals with a background of connections to Honig, stock promotion or outright fraud.  This includes Honig."

22.   None of the statements identified above are true.  Each of the above-referenced statements, among others, is patently false and misleading.

23.   Defendants implied that their statements were based on undisclosed defamatory facts.

24.   In addition, the Article includes statements suggesting that Mr. Honig is guilty by association with third parties who had engaged in wrongdoing.  These statements are false as well.

9

25.    Defendants published the false and misleading statements in the Article for the purpose of driving down the stock prices of Pershing Gold and ChromaDex in an effort to wrongfully enrich Defendants.

26.    At the opening of the market on the morning of June 20, 2016, ChromaDex common shares commenced trading at $5.00/share. Following publication of the false statements in the Article later that day, ChromaDex's stock price plunged as low as $2.46/share, on trading volume almost twenty times the prior 30 days' average volume.

27.    Defendants' publishing of false statements was intended to drive down the stock price of ChromaDex's and Pershing Gold's common stock, so that the Defendants could acquire Pershing Gold and ChromaDex shares at lower prices to cover their short position in both companies which they had previously effectuated short sales. Defendant Drose has admitted that he held a short position in both Pershing Gold and ChromaDex prior to the issuance of his false article.

28.    To this end, Defendants sought to have the Article published and distributed as widely as possible by providing it freely to investor news services on the internet. Once the Article was published on *Seeking Alpha*, it was referenced by numerous financial bloggers and financial websites.

29.    Mr. Honig is informed and believes and based thereon alleges that subsequent to publication of the Article, Defendants covered their short positions, and earned significant illicit profits.

30.    On June 29, 2016, nine days after it was published, Defendants caused the Article to be removed in its entirety from the *Seeking Alpha* website, and replaced with the following statement:

> This article has been removed from the site. The below is a message from the author.
>
> Bleecker Street Research is removing its article on Barry Honig, ChromaDex, and Pershing Gold. After further research we believe that the statements were not supported and the premise of the article was allegedly factually inaccurate. Bleecker Street would like to apologize to ChromaDex, Pershing Gold, and Barry Honig for an allegedly misleading article and to immediately set the record straight for our readers who should not rely on certain aspects upon the withdrawn article or statements of the author therein. To our readers: In the future we will document everything even more carefully.

31.    As a direct result of Defendants' conduct, Mr. Honig has suffered financial losses.  Defendants' false and misleading statements also have damaged Mr. Honig's reputation by causing some readers and potential investors to view Mr. Honig as dishonest and disreputable.

30.    Mr. Honig has suffered and will continue to suffer irreparable harm absent an order requiring Defendants to cease making false and misleading statements about him.

## COUNT I – LIBEL
### (Against All Defendants)

31.    Plaintiff re-alleges and fully incorporates by reference paragraphs 1 through 30 as though fully set forth herein.

32.    Defendants published false and defamatory statements as alleged herein about Plaintiff, ChromaDex and Pershing Gold.

33.    Defendants made these negative defamatory statements with the intent and import that the statements were assertions of fact and not merely opinion, and with knowledge of their falsity and/or with reckless disregard for the truth or falsity thereof, and made them about Plaintiff, ChromaDex and Pershing Gold.

34.    Defendants published these statements, in writing, to unprivileged third parties including, but not limited to, readers and purchasers of online and print financial publications, including *Seeking Alpha*.

35.    Defendants' statements caused readers of the Article, including investors and the community, to view Plaintiff as dishonest, disreputable, and engaging in improper conduct, and thus have diminished the esteem, respect, goodwill and confidence in which Plaintiff was held.   Moreover, Defendants'

12

statements have deterred third parties from doing business with Plaintiff, as well as with Plaintiff's father and brother.

36.    Defendants knew such statements disparaged Plaintiff and intended these statements to cause Plaintiff pecuniary loss and harm to reputation, so that Defendants could profit from a decrease in the value of Pershing Gold and ChromaDex stock.

37.    Defendants made their defamatory and libelous statements with disregard for the falsity of those statements. In addition, Defendants made their defamatory statements with  malice, malicious intent, and with intent to cause the foregoing harm to Plaintiff.   Accordingly, Plaintiff is entitled to and should be awarded damages against Defendant.

38.    It was foreseeable that the defamatory statements would be repeated by second parties.  Defendants, as the originators, are therefore liable for each repetition of the defamatory matter by second parties.

39.    Defendants' defamatory statements caused harm to Plaintiff, and will continue to cause harm to him, including without limitation: harm to his reputation and good will; interference with and damage to Plaintiff's relationships with bankers, other investors, public companies and the media.

40.    Defendants acted with reckless, willful or callous disregard for Plaintiff's rights and with malice, fraud or oppression toward Plaintiff, thereby entitling Plaintiff to an award of punitive damages according to proof at trial.

## COUNT II − LIBEL *PER SE*
(Against All Defendants)

41.    Plaintiff re-alleges and fully incorporates by reference paragraphs 1 through 40 as though fully set forth herein.

42.    Through "Bleecker Street Research," a pseudonym created as an integral part of perpetuating Defendant Drose's scheme to harm Plaintiff for his own pecuniary gain, Defendants made false and defamatory statements as alleged herein about Plaintiff.

43.    Defendants made these defamatory statements with the intent and import that the statements were assertions of fact and not merely opinion, and with knowledge of their falsity and/or with reckless disregard for the truth or falsity thereof.

44.    Defendants published these statements, in writing, to unprivileged third parties including, but not limited to, readers and purchasers of online and print financial publications, including *Seeking Alpha*.

45.    Defendants' false statements maligned Plaintiff in his profession and reputation.

14

46.    Defendants' statements caused readers of the Article, including investors and the community, to view Plaintiff as dishonest, disreputable, and engaging improper conduct, and thus have diminished the esteem, respect, goodwill and confidence in which Plaintiff was held.  Moreover, upon information and belief, Defendant Drose's statements deterred and continue to deter third parties from doing business with Plaintiff.

47.    Defendants knew such statements disparaged Plaintiff, and intended these statements to cause Plaintiff pecuniary loss and harm to reputation.

48.    Defendants made their defamatory statements disregard for the falsity of those statements. In addition, Defendants made their defamatory with malice, malicious intent, and with intent to cause the foregoing harm to Plaintiff. Accordingly, Plaintiff is entitled to and should be awarded damages against Defendants.

49.    It was foreseeable that the defamatory statements would be repeated by second parties. Defendants, as the originators, are therefore liable for each repetition of the defamatory matter by second parties.

50.    Defendants' libelous statements caused harm to Plaintiff, and will continue to cause harm to him, including without limitation: harm to his reputation

and good will; interference with and damage to Plaintiff's relationships with bankers, other investors, public companies and the media.

51.     Defendants acted with reckless, willful or callous disregard for Plaintiff's rights and with malice, fraud or oppression toward Plaintiff, thereby entitling Plaintiff to an award of punitive damages according to proof at trial.

## COUNT III − INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
(Against All Defendants)

52.     Plaintiff re-alleges and fully incorporates by reference paragraphs 1 through 51, as though fully set forth herein.

53.     Plaintiff had valuable prospective economic relationships and business opportunities with his bankers, investments and prospective investments, from which he derived economic gain, and from which he had a reasonable expectancy of deriving future economic gain.

54.     Defendants were aware of these relationships.  Defendants, through the acts alleged herein, wrongfully, knowingly and intentionally acted to interfere with and destroy or harm Plaintiff's existing and/or prospective business relationships.

55.     Defendants' wrongful acts alleged herein have actually interfered with and disrupted Plaintiff's relationships and/or prospective relationships, and these

16

acts designed to interfere with and disrupt these relationships have been a substantial factor in causing Plaintiff harm through the loss of prospective economic advantage.

56.     Plaintiff is entitled to, and should be, awarded damages caused by Defendants' actions, including without limitation, harm to his reputation and good will, interference with and damage to Plaintiff's relationships with bankers, other investors, public companies and the media.

57.     Defendants acted with reckless, willful or callous disregard for Plaintiff's rights and with malice, fraud or oppression toward Plaintiff, thereby entitling Plaintiff to an award of punitive damages according to proof at trial.

## COUNT IV − NEGLIGENCE
### (Against All Defendants)

58.     Plaintiff re-alleges and fully incorporate by reference paragraphs 1 through 57, as though fully set forth herein.

59.     Defendants were engaged in an effort to have the Article drafted and published, purportedly to provide accurate information regarding Honig's investment strategy and ChromaDex's and Pershing Gold's financial condition. Accordingly, Defendants owed a duty to Plaintiff and others to publish information regarding Plaintiff accurately.

60.     Defendants breached that duty by publishing and disseminating information regarding Plaintiff that was false, misleading and was intended to damage to Plaintiff and his reputation.

61.     As a result of Defendants' conduct, Plaintiff has suffered financial damage and damage to his reputation.

62.     Plaintiff is entitled to, and should be, awarded damages caused by Defendants' actions, including without limitation, harm to his reputation and good will, interference with and damage to Plaintiff's relationships with bankers, other investors, public companies and the media.

## COUNT V – PERMANENT INJUNCTION
(Against All Defendants)

63.     Plaintiff re-alleges and fully incorporate by reference paragraphs 1 through 62 as though fully set forth herein.

64.     Defendants' statements were false and defamatory.

65.     As a result of Defendants' libelous statements, Plaintiff has suffered and will continue to suffer irreparable harm including, but not limited to, harm to his reputation.

66.     Absent a permanent injunction barring Defendants from forming new entities and/or utilizing social media, through websites, blogs or other social media mediums, to make disparaging, false and/or defamatory statements either

18

personally or through use of one of those entities or mediums, Plaintiff will suffer irreparable harm.

67.    The harm caused by Defendants' destructive and knowingly false statements regarding Plaintiff outweighs any harm to Defendants if the injunction is granted.

68.    Plaintiff lacks an adequate remedy at law.

69.    Accordingly, the Court should enter a permanent injunction (i) enjoining Defendants from making or publishing any further false and defamatory statements regarding Plaintiff, (ii) compelling Defendants to remove any and all defamatory and violative statements from any website they maintain and (iii) enjoining Defendants from forming or creating new entities with the purpose of preparing and/or publishing any false and defamatory statements regarding Plaintiff.

## JURY DEMAND

Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter an Order:

A.    granting judgment in favor of Plaintiff and against Defendants;

B.      awarding Plaintiff general and special damages in an amount to be determined;

C.      awarding Plaintiff punitive damages in connection with his first, second and third causes of action;

D.      awarding Plaintiff the reasonable attorneys' fees, costs, and expenses he incurred in this action;

E.      permanently enjoining Defendants from making any false and defamatory statements against Plaintiff;

F.      permanently enjoining Defendants from forming or creating any new corporate entities, websites, blogs or utilizing social media mediums to publish false and defamatory information regarding Plaintiff in the future; and

G.      granting such other and further relief as this Court shall deem proper and just.

Dated:  July 5, 2016      **DLA PIPER LLP (US)**

s/ Christopher G. Campbell
Christopher Campbell
Georgia Bar No. 789533
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia  30309-3450
(404) 736-7800
(404) 682- 7800 (Fax)

Perrie M. Weiner (*pro hac vice* admission pending)
Robert D. Weber (*pro hac vice* admission pending)
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067-4704
(310) 595-3000
(310) 595-3300 (Fax)

Charles J. Harder (*pro hac vice* admission pending)
**HARDER MIRELL & ABRAMS LLP**
132 S. Rodeo Dr. Suite 301
Beverly Hills, CA  90212
(424) 203-1600

*Attorneys for Plaintiff Barry Honig*