# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **BARRY HONIG**, an individual, ) | CASE NO. 1:16-cv-02432-CAP |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **PLAINTIFF'S MOTION FOR** |
| ) | **EXPEDITED DISCOVERY;** |
| ) | **MEMORANDUM OF POINTS** |
| **CHRISTOPHER DROSE**, d/b/a ) | **AND AUTHORITIES;** |
| "Bleecker Street Research" and ) | **DECLARATION OF GRANT P.** |
| **DOES 1-10** ) | **ALEXANDER** |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

Pursuant to Federal Rule of Civil Procedure 26(d), 34(a) and Local Rule 7, Plaintiff Barry Honig ("Plaintiff") hereby moves this Court to allow expedited discovery of Defendant Christopher Drose d/b/a Bleecker Street Research ("Defendant").

Specifically, Plaintiff seeks an order permitting him to serve a limited number of document requests and interrogatories, attached to the accompanying Declaration of Grant P. Alexander as "Exhibit 1" and "Exhibit 2," respectively, with responses to be due within 15 days of service, and to take the deposition of Defendant once responsive documents have been produced. Plaintiff seeks the instant relief on the grounds that expedited discovery is necessary to avoid Plaintiff

suffering continued financial and reputational harm. The requested discovery is narrowly tailored towards obtaining the identities of the DOE defendants with whom Defendant Drose conspired, whose activities are causing ongoing and possibly irreparable harm to Plaintiff.

In support of his motion, Plaintiff submits the accompanying Memorandum of Points and Authorities, the Declaration of Grant P. Alexander and attached exhibits, and incorporates by reference the pleadings and motions on file in this action, and any oral argument or such other matters as the Court may consider.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.**    <u>**INTRODUCTION**</u>

Plaintiff Barry Honig brings the instant Motion to obtain limited expedited discovery of Defendant Drose, for the purpose of identifying the other individuals with whom Drose conspired to create and publish a false and defamatory article on the *Seeking Alpha* website regarding Plaintiff and his involvement with two corporations, ChromaDex, Inc. ("ChromaDex") and Pershing Gold Corporation ("Pershing Gold").  Defendant Drose and the unnamed defendants wrote and caused the article to be published for the specific purpose of driving down the market price of ChromaDex and Pershing Gold's common stock so that the defendants could profit from engaging in short sales of those stocks.

As a result of the publication and dissemination of the article on June 20, 2016, the market price of ChromaDex stock immediately dropped over 50%, destroying over $100 million of shareholder value. After the stock price dropped, defendants covered their short positions, and handsomely profited. Once that was done, defendants removed the article from *Seeking Alpha*, and replaced it with an apology, containing an admission that the statements contained in the article "were not supported."

Like other shareholders, Mr. Honig suffered substantial financial losses from the decline in value of his ChromaDex stock holdings. Mr. Honig additionally suffered substantial injury in the form of tarnished reputation and interference with his business relationships. For instance, immediately after the article was published, but before it was retracted, his brokerage account relationship with Wells Fargo Securities was terminated based upon Wells Fargo's erroneous presumption that the lies published about Mr. Honig might have some basis in fact (they do not).

While the article was removed from the *Seeking Alpha* website, portions of the article continue to be posted on numerous other websites, causing Mr. Honig continued and irreparable harm. Accordingly, Mr. Honig seeks limited discovery, on an expedited basis, in order to learn (a) the identities of the DOE defendants who assisted in the preparation and dissemination of the article, (b) the identities of those who funded and/or profited from the scheme, and (c) identification of the sites to which the defendants disseminated the defamatory article, all so that Plaintiff can take immediate steps to remove the injurious article from public view and prevent further circulation of the falsehoods it contains. Mr. Honig seeks this discovery through requests for production and interrogatories, to which

responses will be due fifteen (15) days after service and a deposition which should occur within fourteen (14) days of the production of documents. The discovery sought is narrowly tailored and early discovery of this nature will not be unduly burdensome to Defendant. That discovery has been filed contemporaneously with this motion for the Court's review.

## II.  FACTUAL BACKGROUND

In 2015, Defendant Drose created the pseudonym "Bleecker Street Research" as part of a scheme to anonymously destroy the reputations of companies like ChromaDex, and profit through his personal short sale of stocks in that company. On several occasions in 2015 and 2016, Defendant Drose drafted negative articles regarding various public companies, and caused those articles to be published and widely disseminated both through his own website and other widely-read websites including www.seekingalpha.com ("*Seeking Alpha*") – a website which purports to be a platform for investment research.

Defendant Drose, under his pseudonym "Bleecker Street Research" published on *Seeking Alpha* two negative and false articles regarding Mr. Honig and certain companies in which he invested. The first article was published in July 2015, and was entitled *Chanticleer Holdings: Could Fall*

*60% After Stock Promotion Becomes Clear*. The second, far more damaging article was drafted in June 2016, and entitled *"Pershing Gold and ChromaDex Exposed: These Barry Honig Names Could Fall 70-80% (Or More)"* (hereinafter the "Article").   Defendant submitted the latter Article to *Seeking Alpha*, which on June 20, 2016, Seeking Alpha posted the Article on its site.

Plaintiff believes that one or more sources encouraged Defendant to draft and publish both articles, and assisted him with the drafting and publishing process.  The articles contained numerous statements accusing Plaintiff personally of engaging in fraudulent activity. Defendant Drose and the DOE defendants published the false and misleading statements in the latter Article for the purpose of driving down the stock prices of ChromaDex so that they could wrongfully profit from short sales of the securities of that company. Drose admits that he held short positions in the stock of both companies.

Defendants' publishing of false statements did in fact cause a massive dive in the price of ChromaDex's common stock.  At the opening of the market on the morning of June 20, 2016, ChromaDex common shares commenced trading at $5.00/share.  Following publication of the false

statements in the Article later that day, ChromaDex's stock price plunged as low as $2.46/share, on trading volume almost twenty times the prior 30 days' average volume.

Defendants sought to have the Article published and distributed as widely as possible by providing it freely to investor news services on the internet. After the Article was published on *Seeking Alpha*, it was referenced by numerous financial bloggers and financial websites, causing Plaintiff to suffer the maximum amount of exposure and damage possible.

The impact of Defendant's actions did not stop with the damage to Plaintiff's reputation and the value of ChromaDex stock. Four days after the Article was published, Plaintiff received notice from Wells Fargo Bank - the bank with whom Plaintiff conducts his personal business – informing him that because of the allegations contained in the Article, Plaintiffs accounts with Wells Fargo were being closed as of July 25, 2016. (See Alexander Declaration, ¶ 4, Exhibit "3.") The damage done to Plaintiff is widespread and quite significant.

Plaintiff believes that Defendant Drose's conduct was motivated by actors whose identities are currently unknown to Plaintiff – actors who have profited from Defendant Drose's conduct. Plaintiff further believes

Defendant Drose has documents and information identifying those actors. As long as the Article and portions of it remain published on the internet, Plaintiff will continue to suffer injury. Plaintiff therefore seeks limited expedited discovery of Defendant Drose to learn the scope of his actions to injure Plaintiff and to learn the identities of those actors who motivated and financed Drose's conduct, and may be continuing to republish false statements regarding Mr. Honig for their own financial gain.

## III.  ARGUMENT

In this expedited motion, Plaintiff seeks an order permitting him to conduct limited early discovery of Defendant Drose before the parties engage in the joint Rule 26 meeting of counsel. Plaintiff specifically seeks an order permitting the following:

a) To propound a limited number of document requests to Defendant Drose, which seek documents relating to his drafting and publishing of the Article, as well as communications he had with any third parties regarding Plaintiff, ChromaDex, Pershing Gold and/or the Article, attached to the Declaration of Grant P. Alexander as Exhibit "1" with the production to be due fifteen (15) days after service;

b)  To propound a limited number of interrogatories concerning the same issues, a copy of which are attached to the Alexander Declaration as Exhibit "2" with the production to be due fifteen (15) days after service; and,

c)  To schedule and take the deposition of Defendant within two weeks of receiving Defendant's responses and documents responsive to the document requests and interrogatories.

## A.  <u>Limited Expedited Discovery Is Needed to Prevent Irreparable Harm to Plaintiff.</u>

Time is of the essence.  Limited expedited discovery is necessary for Plaintiff to gather information and learn the identities of Defendant Drose's cohorts and financial backers before Plaintiff suffers additional financial and reputational injury.  Only when Plaintiff learns the scope of Defendant Drose's conduct in preparing and publishing the Article, as well as the identity of those individuals and/or entities who motivated Drose to draft and publish the Article will Plaintiff be able to mitigate the damage that he has suffered.  Without a court order expediting discovery, Plaintiff would be forced to wait months –  until after the Rule 26(f) conference – to conduct basic discovery relating to the claims asserted in his complaint.  While the

need for expedited discovery is great, Defendant Drose will not be burdened or suffer prejudice from an order granting Plaintiff's limited expedited discovery requests and deposition.

## B. Good Cause Exists For Limited Expedited Discovery.

Courts have express authority to order early discovery under Federal Rule of Civil Procedure 26(d). TracFone Wireless, Inc. v. Holden Property Services, LLC, 299 F.R.D. 692, 694 (S.D. Fla. 2014).[1] Courts will allow parties to conduct expedited discovery before a Rule 26(f) conference where the party establishes "good cause" for such discovery. Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 275–76 (N.D. Cal. 2002); Qwest Comm. Intl. Inc. v. WorldQuest Networks, Inc., 213 F.R.D. 418, 419 (D. Colo. 2003). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." Semitool, 208 F.R.D. at 276.

---

[1] The TracFone court considered a motion to expedite discovery in the face of allegations from a plaintiff that the defendant was engaged in a scheme with other unknown third parties to sell, without authorization, the plaintiff's prepaid airtime minutes. The court concluded that a motion for expedited discovery was meritorious as the plaintiff sought to obtain information from the defendant to learn about the extent and scope of the defendant's scheme, as well as the identity of third parties that may have been involved. The court concluded that, "expedited discovery is necessary so that [the plaintiff] may mitigate any additional irreparable harm caused by Defendants' ongoing alleged scheme." TracFone at 694.

Courts generally consider several factors in determining whether good cause exists for expedited discovery, including: (1) the purpose of the requested early discovery; (2) whether the discovery requests are narrowly tailored; (3) whether the discovery burdens the defendants; (4) whether the defendants are able to respond to the requests in an expedited manner; and (5) how far in advance of the formal start of discovery the request is made. Id. at 276-77.

Regarding the first factor, Plaintiff seeks expedited discovery in order to gather evidence regarding the extent and scope of Defendant Drose's preparation and distribution of the Article and to learn the identities of the third parties whom encouraged, supported and financed Drose act in short selling the stock of ChromaDex and Pershing Gold concomitant with Defendant's preparation and publishing of the Article. An order to expedite discovery under Rule 26(d) is especially appropriate in cases such as these, where the plaintiff seeks early discovery to curb further damage being caused and to discover the identity of relevant third parties who might be involved in the actions causing the underlying damage. Semitool, 208 F.R.D. at 276. See also, United States v. Mayer, 2003 WL 1950079, *1–2 (M.D.Fla. Feb. 20, 2003) (ordering expedited civil discovery due to the risk of

irreparable injury); <u>Twentieth Century Fox Film Corp. v. Mow Trading Corp.</u>, 749 F.Supp. 473, 475 (S.D.N.Y. 1990).

Secondly, Plaintiff's limited discovery requests are narrowly tailored. As the Court will see, Plaintiff's document requests and interrogatories, which are provided as exhibits to the accompanying declaration of Grant Alexander, are narrowly tailored to obtain specific information and documents only pertaining to the scope of Defendant Drose's work in shorting the stocks of ChromaDex and Pershing Gold, drafting and publishing the Article, and the communications he had with any third parties regarding those activities.

Regarding the third and fourth factors, Defendant Drose can accommodate Plaintiff's request with minimal burden. Plaintiff's document requests are narrowly tailored to cover a specific period of time and have a specific and narrow scope. Undertaking searches for the few categories of information and documents will not be unduly burdensome or prejudicial. Moreover, Defendant Drose's participation in a short deposition to answer questions about his document production and interrogatory responses and topics related to those responses will not be so onerous as to prejudice Drose's interests.

As for the fifth factor, Plaintiff's limited discovery requests come months before discovery would ordinarily be permitted. For the reasons already stated, this is precisely why expedited discovery is crucial in this case. Weighing the minimal burden to Defendant Drose against the risk of ongoing harm to Plaintiff, Plaintiff's request to expedite discovery is more than justified in this case. Without an order expediting discovery, Plaintiff would be forced to wait months – until well after the Rule 26(f) conference – to secure important evidence to support his claims. Such delay is unwarranted in the face of such ongoing harm against Plaintiff and his interests.

## C. **Good Cause Exists To Expedite Defendant's Response Date.**

The Court has authority to permit expedited discovery. <u>TracFone</u>, 299 F.R.D. at 694. Plaintiff has demonstrated that time is of the essence here because of the ongoing harm Plaintiff is suffering as a result of the actions of Drose and those others who participated in the scheme. To that end, Plaintiff requests that the Court order that Defendant Drose's discovery responses and responsive documents be produced within fifteen (15) days of service of the requests for production. This will ensure that the discovery is

truly expedited to ensure that Plaintiff is able to mitigate any potential further damages, to the extent possible.

## IV.   <u>CONCLUSION</u>

Because of Defendant Drose's conduct, Plaintiff is suffering ongoing financial and reputational harm – harm that will only be mitigated if and when Plaintiff can determine the extent of Drose actions and with whom Defendant was working in order to draft and publish the Article.  The court's order permitting limited expedited discovery will allow Plaintiff to uncover important information and documents relating to the scope of Defendant's injurious actions, and the other actors with whom Defendant was working with to cause Plaintiff harm.  The motion should therefore be granted.


Dated:  July 20, 2016          **DLA PIPER LLP (US)**


s/Christopher G. Campbell
Christopher G. Campbell
Georgia Bar No. 789533
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia  30309-3450
(404) 736-7800
(404) 682-7800 (Fax)

Perrie M. Weiner (*pro hac vice* admission ending)

Robert D. Weber (*pro hac vice* admission pending)
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067-4704
(310) 595-3000
(310) 595-3300 (Fax)

Charles J. Harder (*pro hac vice* admission pending)
**HARDER MIRELL & ABRAMS LLP**
132 S. Rodeo Dr. Suite 301
Beverly Hills, CA  90212
(424) 203-1600

Attorneys for Plaintiff Barry Honig

## <u>DECLARATION OF GRANT P. ALEXANDER</u>

I, GRANT P. ALEXANDER, declare and state as follows:

1.      I am an attorney admitted to practice in the State of California and an Associate in the Los Angeles office of DLA Piper LLP (US).  I am one of the attorneys responsible for representing Plaintiff Barry Honig in the matter entitled <u>Barry Honig v. Christopher Drose, d/ba/ Bleecker Street Research,</u> United States District Court Case No. 1:16-cv-02432-CAP.  I have personal knowledge of the facts contained in this declaration and, if called as a witness, could and would testify as to their accuracy.

2.      Attached hereto as Exhibit "1" is a true and correct copy of proposed requests for production intended to be propounded upon Defendant Christopher Drose pursuant to Federal Rule of Civil Procedure 34.

3.      Attached hereto as Exhibit "2" is a true and correct copy of proposed interrogatories intended to be propounded upon Defendant Christopher Drose pursuant to Federal Rule of Civil Procedure 33.

4.      Attached hereto as Exhibit "3" is a true and correct copy of a letter received by my client from Wells Fargo Bank, dated June 24, 2016.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 19th day of July 2016, at Los Angeles, California.

_____

Grant P. Alexander

**Exhibit 1**

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | | |
|---|---|---|
| **BARRY HONIG**, an individual, | ) | CASE NO. 1:16-cv-02432-CAP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **CHRISTOPHER DROSE**, d/b/a | ) | |
| "Bleecker Street Research" and | ) | |
| **DOES 1-10** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## PLAINTIFF BARRY HONIG'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CHRISTOPHER DROSE

Plaintiff Barry Honig ("Honig"), pursuant to Federal Rule of Civil Procedure 34, requests that Defendant Christopher Drose, d/b/a Bleecker Street Research ("Defendant") produce the documents described below at the offices of DLA Piper (US) LLP, One Atlantic Center, 1201 West Peachtree Street, Suite 2800, Atlanta, Georgia 30309, or at such other location as the parties may mutually agree upon, within 15 days following service of this request. For the purpose of these document requests, the following definitions and instructions shall apply:

# DEFINITIONS AND INSTRUCTIONS

A.     The term "Defendant," "You" and "Your" shall mean and refer to Defendant Christopher Drose, d/b/a Bleecker Street Research, and any of his employees, representatives, agents, servants, consultants, and attorneys, or anyone acting on his behalf.

B.     The term "Honig" shall mean and refer to Plaintiff Barry Honig.

C.     The term "ChromaDex" shall mean and refer to ChromaDex, Inc., including its officers, directors, employees, representatives, or anyone acting on its behalf.

D.     The term "Pershing Gold" shall mean and refer to Pershing Gold Corporation, including its officers, directors, employees, representatives, or anyone acting on its behalf.

E.     The term "Chanticleer" shall mean and refer to Chanticleer Holdings, Inc, including its officers, directors, employees, representatives, or anyone acting on its behalf.

F.     The term "Articles" shall mean and refer to two article written by Defendant entitled "*Pershing Gold and ChromaDex Exposed: These Barry Honig Names Could Fall 70-80% (Or More)*" that was published on or about June

20, 2016, and *Chanticleer Holdings: Could Fall 60% After Stock Promotion Becomes Clear* that was published on or about June 8, 2015.

     G.    The term "communication" shall mean and be deemed to refer to any written or oral conversation, including, but not limited to, telephone conversations, conversations in meetings, letters, memoranda, notes, e-mails, text messages, facsimiles, telegraphic and telex communications.

     H.    The term "concerning" means concerning, regarding, referring to, describing, evidencing, constituting, relating to, comprising, pertaining to, or comprised of.

     I.    The terms "Document" or "Documents" when used in these document requests shall mean and be deemed to refer to all such items subject to discovery within the scope of Rule 34 of the Federal Rules of Civil Procedure, including, but not limited to, the original and all copies and drafts of such documents:

     i.    whether written, recorded, or graphic;

     ii.    however produced or reproduced;

     iii.    whether handwritten, typed xerographically reproduced, photocopied, printed, duplicated or otherwise reproduced (including reproduction by magnetic impulses of a mechanical or electrical transcript);

iv.    whether such documents contain, reflect, record or evidence in whole or in part, any information (including, without limitation, any correspondence, communication, discussion, conclusion, report, recordation or notation) arising out of or concerning the subject matter of each request (including, without limitation, all interim as well as final drafts, reports, pictures, drawings, sketches, diagrams, handwritten notes or other recorded material of any kind or nature); including, but not limited to letters, telegraphs, correspondence, electronic mail, reports, memoranda, agreements, contracts, contract modifications, memorials of telephone conversations, meeting minutes, conference minutes, interoffice and intraoffice communications, work papers, checks, drafts, statements, telexes, audio or video recordings, or other written material of any nature whatsoever.

J.    The terms "person" or "persons" shall mean and be deemed to refer to any and all entities whatsoever, including, without limitation, individuals, associations, firms, companies, partnerships, joint ventures, corporations, subsidiaries, trusts, estates, departments, divisions, affiliates, groups, bureaus, public agencies or boards, as well as any and all predecessors and/or successors-in-interest to, and members who are stockholders of any of the foregoing.

K.    These requests shall be deemed continuing and shall require supplementary answers if You or others subject to Your control, including your attorneys, obtains or becomes aware of documents responsive to these requests subsequent to Plaintiff's initial inspection and copying.

L.     A document shall be deemed to refer, relate, or pertain to a matter if it expressly or otherwise clearly refers to the matter, or its subject matter bears a clear logical relationship to the matter.

M.     Whenever a corporation or other entity or the term "entity" is referred to in these document requests it is intended to include the entity, its parent or subsidiary entities, and their owners, members, shareholders, officer, directors, agents, servants, attorneys, or any other person acting on its behalf, or with its authority.

N.     When responding to these document requests, please restate each document request, followed by your response.

O.     If any document is withheld under a claim of privilege, please state the privilege invoked and identify each document by date, author, parties to, and subject matter (without disclosing its contents) sufficient to allow the Court to rule upon the applicability of the privilege invoked.

## DOCUMENTS REQUESTED

1. All communications with any third party concerning the Articles.

2. All communications with any third parties concerning compensation provided to You in connection with the publishing of the Articles.

3. All communications with any third party concerning Honig, ChromaDex, Pershing Gold or Chanticleer.

4. All Documents You were provided by any third party concerning Honig, ChromaDex, Pershing Gold or Chanticleer.

5. All materials You relied upon, referenced or reviewed in conjunction with Your preparation of the Articles.

6. All communications with third parties about publishing the Articles.

7. All communications with third parties about shorting the stock of ChromaDex or Pershing Gold.

8. All communications with *Seeking Alpha* concerning the Articles or Honig.

9. All account statements for accounts controlled by you which reflect transactions in the securities of ChromaDex or Pershing Gold during 2016.

10. All account statements for accounts controlled by you which reflect transactions in the securities of Chanticleer during 2015.

11. All records reflecting telephone calls or text message exchanges concerning the drafting or publication of the Articles.

12. All records reflecting telephone calls or text message exchanges concerning Your short sales of Pershing Gold, Chanticleer and/or ChromaDex stock.

Dated: July 21, 2016     **DLA PIPER LLP (US)**

s/Christopher G. Campbell
_____
Christopher G. Campbell
Georgia Bar No. 789533
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia 30309-3450
(404) 736-7800
(404) 682-7800 (Fax)

Perrie M. Weiner (*pro hac vice* admission ending)
Robert D. Weber (*pro hac vice* admission pending)
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067-4704
(310) 595-3000
(310) 595-3300 (Fax)

Charles J. Harder (*pro hac vice* admission pending)
**HARDER MIRELL & ABRAMS LLP**
132 S. Rodeo Dr. Suite 301
Beverly Hills, CA 90212
(424) 203-1600

Attorneys for Plaintiff Barry Honig

**Exhibit 2**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **BARRY HONIG**, an individual, ) | CASE NO. 1:16-cv-02432-CAP |
| Plaintiff, ) | |
| v. ) | |
| **CHRISTOPHER DROSE**, d/b/a ) | |
| "Bleecker Street Research" and ) | |
| **DOES 1-10** ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFF BARRY HONIG'S FIRST SET OF INTERROGATORIES
## TO DEFENDANT CHRISTOPHER DROSE

Pursuant to Fed. R. Civ. P. 26 and 33, Plaintiff Barry Honig ("Honig"),

requests that Defendant Christopher Drose, d/b/a Bleecker Street Research

("Defendant") answer the following Interrogatories in writing and under oath

within the time required by the Federal Rules of Civil Procedure. For the purpose

of these Interrogatories, the following definitions and instructions shall apply:

### DEFINITIONS AND INSTRUCTIONS

A.    The term "Defendant," "You" and "Your" shall mean and refer to

Defendant Christopher Drose, d/b/a Bleecker Street Research, and any of his

employees, representatives, agents, servants, consultants, and attorneys, or anyone acting on his behalf.

B.    The term "Honig" shall mean and refer to Plaintiff Barry Honig.

C.    The term "ChromaDex" shall mean and refer to ChromaDex, Inc., including its officers, directors, employees, representatives, or anyone acting on its behalf.

D.    The term "Pershing Gold" shall mean and refer to Pershing Gold Corporation, including its officers, directors, employees, representatives, or anyone acting on its behalf.

E.    The term "Chanticleer" shall mean and refer to Chanticleer Holdings, Inc, including its officers, directors, employees, representatives, or anyone acting on its behalf.

F.    The term "Seeking Alpha" shall mean and refer to Seeking Alpha, its predecessors and successors, including its including its officers, directors, employees, editors, or anyone acting on its behalf.

G.    The term "Articles" shall mean and refer to two article written by Defendant entitled "*Pershing Gold and ChromaDex Exposed: These Barry Honig Names Could Fall 70-80% (Or More)*" that was published on or about June 20,

2016, and *Chanticleer Holdings: Could Fall 60% After Stock Promotion Becomes Clear* that was published on or about June 8, 2015.

H.    The term "communication" shall mean and be deemed to refer to any written or oral conversation, including, but not limited to, telephone conversations, conversations in meetings, letters, memoranda, notes, e-mails, facsimiles, telegraphic and telex communications.

I.    The terms "person" or "persons" shall mean and be deemed to refer to any and all entities whatsoever, including, without limitation, individuals, associations, firms, companies, partnerships, joint ventures, corporations, subsidiaries, trusts, estates, departments, divisions, affiliates, groups, bureaus, public agencies or boards, as well as any and all predecessors and/or successors-in-interest to, and members who are stockholders of any of the foregoing.

J.    Any response to a request to identify a person shall include the following:

  i.    name;

  ii.    business address and telephone number;

  iii.    home address and telephone number; and

  iv.    title, occupation and employer.

K.    These interrogatories shall be deemed continuing and shall require supplementary answers if You or others subject to Your control, including your

attorneys, obtains or becomes aware of documents responsive to these requests subsequent to Plaintiff's initial inspection and copying.

L.      Whenever a corporation or other entity or the term "entity" is referred to in these interrogatories it is intended to include the entity, its parent or subsidiary entities, and their owners, members, shareholders, officer, directors, agents, servants, attorneys, or any other person acting on its behalf, or with its authority.

M.      When responding to these interrogatories, please restate each interrogatory, followed by your response.

N.      If any information is withheld under a claim of privilege, please state the privilege invoked to allow the Court to rule upon its applicability.

## INTERROGATORIES

1.      Identify all persons associated with Seeking Alpha with whom You communicated regarding the Articles.

2.      Identify all persons with whom you communicated that provided information to You that you used in the Articles.

3.      Identify any and all persons who provided any assistance to You in the drafting of the Articles.

4.    Identify all persons who You notified that the Article entitled *"Pershing Gold and ChromaDex Exposed: These Barry Honig Names Could Fall 70-80% (Or More)"* would be published, prior to the publication of the Article on Seeking Alpha June 20, 2016.

5.    Identify the broker who brokered any short sales of ChromaDex and Pershing Gold stock for Your account(s).

6.    Identify all persons or entities to whom You sent a copy of the Articles, or a link to the Articles on the Seeking Alpha website.

7.    Identify all telephone numbers, including the name of Your service provider(s), that You used to communicate regarding the Articles, the information contained in the Articles and/or your short sales of ChromaDex and Pershing Gold stock.

8.    Identify all computing devices (laptops, desktops, tablets, smartphones) that You owned, possessed, controlled or had access to from January 1, 2016 to the present.

Dated:  July 21, 2016          **DLA PIPER LLP (US)**


s/Christopher G. Campbell
Christopher G. Campbell
Georgia Bar No. 789533
One Atlantic Center
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia  30309-3450
(404) 736-7800
(404) 682-7800 (Fax)

Perrie M. Weiner (*pro hac vice* admission ending)
Robert D. Weber (*pro hac vice* admission pending)
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067-4704
(310) 595-3000
(310) 595-3300 (Fax)

Charles J. Harder (*pro hac vice* admission pending)
**HARDER MIRELL & ABRAMS LLP**
132 S. Rodeo Dr. Suite 301
Beverly Hills, CA  90212
(424) 203-1600

Attorneys for Plaintiff Barry Honig

**Exhibit 3**



Dennis A. Schmidt
Branch Manager
Senior Vice President

Direct: 212-205-2852
Fax: 212-205-2853
Toll Free: 866-963-7656
dennis.schmidt@wfadvisors.com

Wells Fargo Advisors, LLC
1211 Avenue of The Americas 27th Floor
New York, NY 10036

June 24, 2016

Barry Honig
Renee Honig
4263 NW 61st Lane
Boca Raton FL 33496

Re: Termination of Customer Account Relationship
     Accounts:      **8267-2023**      **Charitable Foundation Inc**
                        **7567-9252**      **Barry C Honig**

Dear Mr. & Mrs. Honig,

Wells Fargo Advisors has always prided itself on its commitment towards providing the highest quality service to all of our customers. Despite this commitment to service, we occasionally experience a situation whereby the needs and/or expectations of a client are not compatible with what we are in a position to offer.

Therefore, we are now exercising our option under your client agreement(s) to terminate the above-referenced account(s) with our firm. We request that you transfer your assets to another firm of your choice within *[30]* days from the date of this letter ( **July 25, 2016** ). Should you not transfer your account by the requested date, your account will be placed on a trading restriction.

We retain the right to take any action permitted under your client agreement(s), including but not limited to liquidating securities and taking other action if your accounts fall below our margin maintenance requirements or for any other reason deemed necessary.

Please refer to your General Account Agreement and Disclosure Document for questions regarding client termination.

If you have any questions, please contact me at *212-205-2852*. We wish you success in your future financial endeavors.

Sincerely,

Dennis Schmidt
Senior Vice President
Branch Manager

RICHARD ARDITO
HYRJ
PA3411C

6/27/16

'Together we'll go far'

